## THE I. F. CHAPMAN.

### (District Court, D. Rhode Island. June 25, 1914.)

### No. 1292.

SHIPPING (§ 84*)—LIABILITY FOR INJURY TO STEVEDORE—DEFECTIVE EQUIPMENT.

Libelant, when going down into the hold of a coal barge in the performance of his duty as timekeeper of stevedores engaged in discharging, fell and was injured by reason of the breaking of a rung of the stanchion ladder, which was a part of the permanent equipment of the vessel. While portable ladders were furnished by the barge, there was evidence that stevedores customarily used the stanchion ladders with the knowledge of the master. The rungs of such ladder had not been recently inspected, and some of them were broken off, and there was evidence tending to show that the one which was seized by libelant was bent and broke at an old fracture. *Held*, that under the circumstances it was the duty of the barge to keep the ladder in reasonable repair, and that it was liable for the injury.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 342, 349–351; Dec. Dig. § 84.*]

In Admiralty. Suit by Jacob Kazarian against the barge I. F. Chapman. Decree for libelant.

Frank Healy, of Providence, R. I., for libelant.
J. J. Macklin, of New York City, for claimant.

BROWN, District Judge. This is a libel in rem by Kazarian for personal injuries sustained on the night of December 26, 1912, by falling down the after-hatch of the coal barge "I. F. Chapman," which was being discharged by the consignee, the New York, New Haven & Hartford Railroad, at the Wilkesbarre Pier in the Providence river. The stevedores were employed by the railroad.

Kazarian had worked as a coal shoveler at the Wilkesbarre Pier for about 11 years, but on the night of the accident, and for about three months previous, had been employed by the railroad as timekeeper.

The night gang went to work at 7 o'clock p. m., and were working in the lower hold. Kazarian testified that he was going below to take the time of the men; that he was attempting to descend by a stanchion ladder, consisting of a stanchion with wrought-iron rungs driven through it at intervals; that one of·these rungs which he had grasped with his hand broke or pulled out of place, precipitating him into the lower hold, a distance of some 15 feet.

This stanchion ladder was a part of the permanent equipment of the vessel. From the testimony of the claimant it appears that these iron rungs were put into the ship when she was converted from a full-rigged sailing ship into a coal barge. They appear to have been originally of proper construction for the purpose.

The claimant contends that the stanchion ladders, which were provided not only in the after-hatch but in the other hatches, were for the use only of the crew, who were expert in using them, and that for the use of the stevedores proper and sufficient portable ladders were

provided, which were not used by the men discharging the barge merely because they would not take the necessary trouble to put them in the hold and use them. The testimony shows that the barge was provided by the owners with portable ladders suitable for use. There was a conflict of testimony as to whether the use of these ladders had been expressly refused to the men, and whether they were available for use; witnesses for the libelant testifying to a request and refusal of the use of ladders, and witnesses for the claimant denying such request and refusal. Upon the whole testimony, I am not satisfied that upon this particular night the master or other officer in charge of the Chapman had refused an express request for the use of a portable ladder. The testimony, however, shows a very general practice of the longshoremen to use the stanchion ladders in getting in and out of the hold of this and other barges unloaded at this pier. The Chapman had been discharging at this pier from January, 1908, and had been discharged 44 times.

I am of the opinion that the evidence shows the master of this barge to have had full knowledge of the practice of the longshoremen. I find that stanchion ladders of this description are a usual part of the permanent equipment of coal barges, customarily used by the longshoremen in entering and leaving the hold. It follows that the duty rested upon the owners to take reasonable care that they should be in proper condition for such use as might be made of them, not only by members of the crew, but by the coal shovelers. The barge was equipped some five or six years before the accident with a suitable stanchion ladder. From an inspection made after the accident, it appears that the ladder had been subject to rough usage; that some of the rungs had been broken off or removed; and that one of them, opposite the place from which it is claimed by the libelant that the rung which was produced in court fell when grasped by Kazarian, was knocked upwards at an angle of about 45 degrees with the face of the stanchion. It also appears that some railroad spikes had been inserted as handholds in place of portions of rungs which had been broken off.

The condition of the ladder as testified to indicates a series of injuries received at different times rather than recent injuries received upon her last trip. The witness Savage testified to a general overhauling of the barge about six months before the accident, and said that the rungs were then in place. There was no evidence that any repairs were made to the stanchion ladder at this time, or that since that time there had been any inspection or repair. It is true that Capt. Beers testified that he used to go down to the hold about every trip, and sounded them with his foot before going down; but his testimony is insufficient to show any proper inspection.

At the trial was produced a piece of iron similar to that used for the rungs, which witnesses testified was found in the hold near where Kazarian fell, immediately after the accident. This appeared to have been bent and broken by a blow or blows of great violence. The exhibit was bent and showed what appeared to be an old fracture.

While there is room for some doubt as to whether the iron produced is in fact a portion of a handhold which broke near the face of the

stanchion, yet from the testimony of witnesses to finding immediately after the accident, and at the place where Kazarian fell, of this piece of iron, which corresponds in general appearance to other rungs on the barge, and from the evidence that a handhold was missing opposite the portion of the rung which had been knocked up at an angle of 45 degrees, I find that the evidence preponderates in favor of the complainant's claim that this is in fact a portion of a rung in which there was an old break, which caused the rung to give way, resulting in the accident. If this exhibit is not in fact a part of the rung whose opposite end remained in the stanchion, it would rather seem that it was within the power of the claimant to have demonstrated that fact.

The claimant calls attention to the fact that when the barge is loaded the stanchion ladder is covered with coal, and that there is no opportunity for inspection until after the coal is removed, and this only after the vessel is in the hands of the stevedores who discharge her. The injury to the rung, however, is such as could hardly have been received on the voyage. There is no evidence that it is such as would likely have been received in loading, and if received upon the occasion of a former discharge it should have been discoverable.

According to the weight of the evidence, the break in the iron which caused the handhold to give way was an old and rusty break. That it occurred on the last trip, or so recently that there was no opportunity to discover it, is much less probable than that it occurred at some time or times during the periods occupied by her 43 previous trips, since her conversion into a coal barge.

That in addition to the stanchion ladder there were furnished portable ladders, which might have been used had the foreman of the stevedores seen fit to use them, does not seem a sufficient defense in this case. Reasonable care depends upon a reasonable apprehension of danger. There was ground for a reasonable apprehension of danger, not only to the crew, but to longshoremen, in view of the evidence from credible witnesses of the general practice of using these stanchion ladders by longshoremen as well as by crew. The General Knox (D. C.) 180 Fed. 489.

The question of liability is determined in favor of the libelant, and the case may stand for further hearing upon the amount of damages.